807 So.2d 528 (2001)
GADSDEN BUDWEISER DISTRIBUTING COMPANY, INC.
v.
Monroe HOLLAND.
1000350.
Supreme Court of Alabama.
June 29, 2001.
Philip E. Miles and Larry H. Keener of Cusimano, Keener, Roberts, Kimberley & Miles, P.C., Gadsden, for appellant.
Donna F. McCurley and Thomas A. King of King & McCurley, P.C., Gadsden, for appellee.
*529 HOUSTON, Justice.
Gadsden Budweiser Distributing Company, Inc. ("Gadsden Budweiser"), is the defendant in an action pending in the Etowah Circuit Court. It appeals from an order denying its motion to compel arbitration.[1]
The plaintiff, Monroe Holland, was employed as director of sales at Gadsden Budweiser. On February 3, 1997, he signed an "Acknowledgment of Receipt of Employee Handbook," which stated:
"This will acknowledge that I have received my copy of the Company's Employee Handbook and I will familiarize myself with its contents.
"I UNDERSTAND THAT I HAVE THE RIGHT TO TERMINATE MY EMPLOYMENT AT ANY TIME, WITH OR WITHOUT CAUSE, AND THAT THE DISTRIBUTORSHIP HAS A SIMILAR RIGHT. I FURTHER UNDERSTAND THAT MY STATUS AS AN `AT-WILL EMPLOYEE' MAY NOT BE CHANGED EXCEPT IN WRITING SIGNED BY THE PRESIDENT OF THE COMPANY.
"I ALSO UNDERSTAND AND AGREE THAT ALL DISPUTES OR CLAIMS BETWEEN ME AND THE DISTRIBUTORSHIP, ITS MANAGERS OR EMPLOYEES, ARISING OUT OF MY EMPLOYMENT OR THE TERMINATION OF MY EMPLOYMENT, WILL BE SUBMITTED TO AND FINALLY RESOLVED EXCLUSIVELY THROUGH MANDATORY BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT IN CONFORMITY WITH APPLICABLE STATE LAW.
"I understand that this Handbook represents only current policies, regulations, and benefits, and that it does not create a contract of employment. The Company retains the right to change these policies, regulations, and benefits as it deems advisable."
After Holland had signed this acknowledgment form, it was placed in his personnel file.
In February 1998, Gadsden Budweiser told Holland that his position as director of sales was being eliminated and he was being demoted to the job of an area manager. At the time of his demotion, Holland was 58 years of age. In May 1998, Gadsden Budweiser promoted a 38-year-old employee to the position of director of sales.
In March 2000, Holland sued Gadsden Budweiser, seeking damages based on allegations of age discrimination, "retaliation," fraud and suppression, and "negligent retention and supervision." Gadsden Budweiser moved to dismiss the complaint, contending that because Holland had agreed that "all disputes or claims between [him] and the distributorship, its managers or employees, arising out of [his] employment or the termination of [his] employment, [would] be submitted to and finally resolved exclusively through mandatory binding arbitration," he must submit his claims to binding arbitration. Gadsden Budweiser also moved to compel arbitration.
*530 After conducting a hearing, the trial court entered an order denying the motion to compel arbitration; the court denied it
"on the basis or grounds that [Gadsden Budweiser] reserves the right to change the policies, regulations and benefits of the Handbook, but then seeks to use and enforce an acknowledgment of the handbook to require arbitration. The acknowledgment and handbook should be considered together."
This appeal followed. The issue is whether the arbitration agreement contained in Holland's signed "Acknowledgment of Receipt of Employee Handbook" is a valid and enforceable arbitration agreement that would require Holland to arbitrate his employment-related dispute.
"The Federal Arbitration Act, 9 U.S.C. §§ 1-16, provides that an arbitration clause contained in a contract involving interstate commerce will be enforceable. The arbitration clause will generally be enforceable against those parties who signed the contract." Ex parte Beasley, 712 So.2d 338, 340 (Ala.1998). It is undisputed that Gadsden Budweiser is engaged in interstate commerce.
Ex parte Beasley, supra, involved an employment-related dispute. The trial court granted the defendant Brookwood's motion to compel arbitration of the employee's claims. The plaintiff, Beasley, petitioned for a writ of mandamus directing the trial court to vacate its order requiring arbitration. The defendant's standard employee handbook contained an arbitration provision, but Beasley argued that the arbitration provision was not binding, given the language of the acknowledgment, which stated, "[N]o written statement or agreement in this handbook ... is binding...." Ex parte Beasley, 712 So.2d at 340. This Court, agreeing with Beasley's contention, issued the writ, stating:
"The acknowledgment form contained in Brookwood's standard employee handbook would have created a binding obligation to arbitrate under Patterson [v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir.1997),] if Beasley had signed that form; however, she did not sign that form. Instead, the evidence submitted by Brookwood shows that Beasley signed an acknowledgment form that is similar to the standard form, but that does not contain the arbitration clause. Absent Beasley's signature on a document that contains a valid arbitration clause, we cannot hold that she agreed to arbitrate her employment claims against Brookwood."
Ex parte Beasley, 712 So.2d at 341.
The acknowledgment form signed by Holland contained an arbitration clauseHolland specifically "agree[d] that all disputes or claims between [him] and the distributorship, its managers or employees, arising out of [his] employment or the termination of [his] employment, [would] be submitted to and finally resolved exclusively through mandatory binding arbitration under the Federal Arbitration Act in conformity with applicable state law." This language evidences a clear intent to bind the employer and the employee. Ex parte McNaughton, 728 So.2d 592, 595, n. 4 (Ala.1998).
Holland argues that it is not clear from a reading of the acknowledgment that the parties were agreeing to be bound by the arbitration provision contained in the acknowledgment. Holland points out that three of the paragraphs begin with "I understand," and he says the tone of the agreement does not change to indicate that the provision was intended to have a binding effect, as discussed in Ex parte McNaughton and Ex parte Beasley. However, we cannot agree. The arbitration provision of the acknowledgment begins *531 with the clause "I also understand and agree ...." (Emphasis added.) The arbitration provision is the only place where the word "agree" appears in this acknowledgment form. In this arbitration provision, Holland agreed to submit all employment-related disputes or claims to binding arbitration. This was a change in tone to indicate a binding effect of this arbitration provision.
Holland also argues that the arbitration provision is unenforceable because, he says, there is no "mutuality of obligation." However, in Ex parte McNaughton, 728 So.2d at 595-96, this Court stated:
"Further, under clear Alabama contract law, United's providing at-will employment to McNaughton constituted sufficient consideration in exchange for McNaughton's agreement to arbitrate her employment disputes under United's arbitration policy. This Court has consistently held that an employer's providing continued at-will employment is sufficient consideration to make an employee's promise to his employer binding.... Similarly, United's provision of new at-will employment to McNaughton was sufficient consideration to make McNaughton's promise to arbitrate employment disputes under United's arbitration policy a binding agreement."
Thus, we do not find the arbitration provision to be unenforceable for a lack of "mutuality of obligation."
Holland also argues that the agreement between him and Gadsden Budweiser is exempted from the operation of the Federal Arbitration Act ("FAA") by this clause appearing in § 1 of that Act: "[B]ut nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." In Robert Frank McAlpine Architecture, Inc. v. Heilpern, 712 So.2d 738, 749 (Ala.1998), this Court wrote:
"We also agree with the conclusion reached by the courts of appeals for the various circuits that Congress's specific reference to seamen and railroad workers reflects an intent to limit the scope of the exemption to workers directly engaged in the transportation of goods in an interstate market, as opposed to workers involved in the generation of goods and services for interstate markets. Therefore, we hold, as 10 United States Courts of Appeals ... have held: that the § 1 exemption of `contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce' covers only those workers directly engaged in the movement of goods in interstate commerce, i.e., those workers directly engaged in the interstate transportation and distribution of goods. We conclude, as all of the federal courts of appeals that have considered the issue have apparently concluded, that the § 1 exemption was included by Congress as a concession to organized labor, specifically the Seamen's Union, and that, consistent with Congressional intent that the FAA be broad in scope, the exemption was intended to be a narrow one, not applying to employment contracts across the board, but, instead, to the employment contracts of those workers directly engaged in the movement of goods in interstate commerce."
See also Gold Kist, Inc. v. Baker, 730 So.2d 614 (Ala.1999). As the United States Supreme Court stated in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 1311, 149 L.Ed.2d 234 (2001): "Section 1 exempts from the FAA only contracts of employment of transportation workers." *532 Holland was first director of sales for Gadsden Budweiser and was then an area manager. While his employment with Gadsden Budweiser substantially affected interstate commerce, he was not a transportation worker; thus, the exemption clause of § 1 of the FAA does not apply.
We conclude that Holland agreed to arbitrate his employment-related claims against Gadsden Budweiser. Thus, the order denying the motion to compel arbitration is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
MOORE, Chief Justice (dissenting).
This case involves an attempt by Gadsden Budweiser Distributing Company, Inc. ("Gadsden Budweiser"), to impose an alleged contract on its employee Monroe Holland. Gadsden Budweiser required Holland, its director of sales, to sign a form in February 1997 acknowledging his receipt of the company's new handbook. This form contained a mandatory, binding, predispute arbitration clause, which was premised on the authority of the Federal Arbitration Act ("FAA"). This form concluded with the provision: "The Company retains the right to change these policies, regulations, and benefits as it deems advisable." (C. 19.)
According to uncontradicted facts presented by Holland, Gadsden Budweiser informed Holland in February 1998 (approximately one year later) that his position was being eliminated. Therefore, Gadsden Budweiser told Holland, who was then 58 years old, that he was being demoted to the job of an area manager.
Gadsden Budweiser continued to employ and to compensate Holland as director of sales until May 1, 1998. On May 1, 1998, Gadsden Budweiser re-created the position of director of sales, and promoted a 38-year-old employee to that position. Holland sued Gadsden Budweiser, alleging age discrimination, fraud, "retaliation," and "negligent retention and supervision." Gadsden Budweiser moved to dismiss the lawsuit or to compel arbitration of Holland's claims. After conducting a hearing, the court denied the motion. I conclude that the trial court correctly held that Gadsden Budweiser's reservation of the right to "change the policies, regulations, and benefits" had created an illusory contract.
Gadsden Budweiser appealed, arguing that the FAA requires the trial court to compel arbitration in this case. This Court should defer to the trial court and affirm its ruling.
The language of Gadsden Budweiser's form was illusory, not binding. Interestingly, according to Holland, Gadsden Budweiser convened a meeting of its employees at its Gadsden facility (a meeting from which Holland was excluded) while this motion was pending. Gadsden Budweiser presented a new three-page arbitration provision to its employees, a provision without the illusory language contained in the original form that Holland had signed. The employees were told that they had to sign this new form within 48 hours or lose their jobs. (C. 34.) This response by Gadsden Budweiser, at that point and in that manner, indicates that it realized the agreement with Holland was, in fact, not binding.
The majority opinion reverses the trial court's order denying the motion to compel arbitration; it does so by strictly construing the Federal Arbitration Act while completely *533 ignoring this Court's own controlling precedent.
In Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 729 (Ala.1987), a case concerning the enforceability of provisions in an employee handbook, this Court recognized that employee handbooks are not "`"corporate illusion[s], `full of sound [and fury] signifying nothing.'"'" (Quoting Weiner v. McGraw-Hill Inc., 83 A.D.2d 810, at 810-11, 442 N.Y.S.2d 11, 11 (1981) (Kupferman, J., dissenting), quoting in turn W. Shakespeare, Macbeth, V, v, 27-28, as quoted in Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, at 462, 443 N.E.2d 441, at 443, 457 N.Y.S.2d 193, at 195 (1982).) In Hoffman-La Roche this Court also quoted Hill v. Rice, 259 Ala. 587, 67 So.2d 789(1953) for the following principle: "`"It is indispensable to the validity of a contract that it should be mutually obligatory upon both parties, or it will bind neither."'" (Quoting Alabama City, G. & A. Ry. v. Kyle, 202 Ala. 552, 558, 81 So. 54-60 (1918).)
Eleven years later, in Ex parte McNaughton, 728 So.2d 592 (Ala.1998), another case concerning the enforceability of the provisions of an employee handbook, Justice Almon wrote, in a dissent I find compelling:
"A contract of adhesion is one that is offered on a `take it or leave it' basis to a consumer who has no meaningful choice in the acquisition of goods or services. Northcom, [Ltd. v. James, 694 So.2d 1329 (Ala.1997) ]. I would hold this definition applicable to employees as well as consumers, at least as to certain terms of employment, such as one that attempts to force an employee to surrender constitutional rights....
"I also think it would be unconscionable to enforce the arbitration clause in this employee handbook. United gives its employee no right or benefit for his or her `agreement' to submit any claims or disputes to arbitration. United reserves to itself the absolute right to amend or repeal any provision of its handbook, including the arbitration clause. Thus, ... any purported promise it has made to arbitrate its claims is simply illusory."
In the instant case, Gadsden Budweiser imposed an arbitration provision as to which it expressly reserved "the right to change [the policy] ... as it deems advisable." (C. 19.) Accordingly, the trial court properly denied Gadsden Budweiser's motion to compel arbitration, holding that the acknowledgment Holland signed was an illusory contract. I would affirm the trial court's order. I therefore respectfully dissent.
JOHNSTONE, J., concurs.
JOHNSTONE, Justice (dissenting).
I join in Chief Justice Moore's dissent. Moreover, I observe that the law and facts of this case create the interesting logical anomaly that Gadsden Budweiser should lose as the result of either of two possibilities which are virtual opposites of each other. If Holland's at-will employment contract "engaged [him] in foreign or interstate commerce," then § 1 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, ("FAA"), expressly exempts such "contracts of employment" from the operation of the FAA.
"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
*534 IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). On the other hand, if his at-will employment contract did not substantially affect interstate or foreign commerce, the FAA, by its own terms, still does not apply. Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999), and Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000). If the arbitration "agreement" in this case was not part of a contract of at-will employment at all, then the record lacks evidence that the distinct arbitration "agreement" itself substantially affected interstate or foreign commerce so as to be subject to the FAA. See Rogers, supra, and Sisters, supra. Of course, all of the rationales in Chief Justice Moore's dissent and my dissent, whether presented to the trial court or not, are available on appellate review to sustain the ruling by the trial court. Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). See also Ex parte Ryals, 773 So.2d 1011 (Ala.2000).
NOTES
[1] "[A]n appeal is the appropriate method for challenging a trial court's denial of a motion to compel arbitration." Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 600 (Ala.1999). This Court conducts a de novo review of the trial court's denial of the motion to compel arbitration. Crimson Indus., Inc., 736 So.2d at 600.

See Rule 4(d), Ala. R.App. P., as amended May 10, 2001, effective October 1, 2001. By that amendment, an order either granting or denying a motion to compel arbitration will be reviewable by appeal.